UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

101 W. Lombard St., Baltimore, MD 21201

FILED
LOGGED          ENTERED
                RECEIVED

JUN - 1 2020

CLERK AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY

DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, PLAINTIFF<br><br>v.<br><br>JULIA TERYAEVA-REED, Defendant. | Criminal No. 1:14-CR-0207 |

EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582 (C)(1)(A)(i) AS AMENDED BY SEC 603 OF the FIRST STEP ACT AND PURSUANT TO THE CARES ACT.

COMES NOW, Julia Teryaeva-Reed, hereinafter the "Petitioner", unschooled in law and proceeding pro se, and MOVES THIS HONORABLE COURT TO REDUCE HER SENTENCE BASED ON EXTRAORDINARY AND COMPELLING CIRCUMSTANCES AND REASONS DISCUSSED HEREIN, PURSUANT TO AMENDED 18 U.S.C. § 3582 (C)(1)(A)(i) by SEC 603 OF THE FIRST STEP ACT AND PURSUANT TO EXPANDED APPLICATION OF THE CARES ACT.

## INTRODUCTION

PETITIONER WAS ARRESTED on October 7th, 2013. She has been DETAINED IN 5 FACILITIES SINCE HER ARREST: Riker's Island Jail, Baltimore City Jail, Supermax, CCA/CTF in Washington, DC and FCI-Aliceville, Alabama. HER State charges WERE DROPPED AND FEDERAL INDICTMENT Followed in 2014, AND then SUPERSEEDING INDICTMENT in 2015. PETITIONER PLED Guilty TO count one under

18 U.S.C. §844 (h)(1) USE OF FIRE TO COMMIT FEDERAL FELONY, COUNT 2
18 U.S.C. §1343 WIRE FRAUD, COUNTS 5,7  18 U.S.C. §844(i) MALICIOUS
DESTRUCTION OF REAL PROPERTY BY FIRE. PETITIONER WAS SENTENCED
ON July 13th, 2017 TO A harsh 162 months sentence FOR her
FIRST OFFENSE.

Arson statute under 18 U.S.C. §844(h)(1) CARRIES A manda-
TORY minimum REQUIREMENT and MUST RUN CONSEQUTIVE-BOTH
ADDRESSED in FIRST STEP ACT that now allows FOR SAFETY
valve provision and eliminated stacking practices In
similar 924(c) convictions. LEGISLATIVE INTENT is clear-to
GIVE FAIR SENTENCES THAT WOULD PROVIDE FOR JUST PUNISHMENT.

844(h)(1)THE LEGISLATIVE INTENT OF CONGRESS In IMPOSING A
mandatory minimum WAS TO PREVENT public FIRES DURING
1960s Civil Rights MOVEMENT. PETITIONER WAS CHARGED under
THIS STATUTE EVEN THOUGH IT WAS HER OWN PRIVATE PROPERTY
THAT WAS SET ON FIRE AND its ACTIVE USE WAS PERSONAL.
The legislative INTENT OF 844(i) WAS TO PROTECT ALL BUSI-
NESS PROPERTY AS ACTIVE involvement IN "INTERSTATE
COMMERCE" is A required element. That element is MISSING
As Petitioner used both vehicles and the house FOR PERSO-
NAL USE AT THAT TIME. (SEE "MISSING ELEMENTS AND
LEGISLATIVE INTENT")(Exhibit C).

FIRST STEP ACT by amending 18 U.S.C. 3582 GAVE
judges BROAD DISCRETION TO INTERPRET WHAT CONSTITUTES
"EXTRAORDINARY AND COMPELLING CIRCUMSTANCES" AND WHAT
SENTENCE REDUCTION might BE APPROPRIATE IN CASE-BY-
-CASE BASIS.

Your Honor ONCE STATED TO THE PETITIONER THAT SHE
"SHOULD HAVE LITIGATED" WHEN SHE WAS FACED WITH PERSONAL/
BUSINESS PROBLEMS. PETITIONER TOOK THAT ADVISE AND
CORRECTION VERY SERIOUSLY, SHE STUDIED THE LAW AND IS NOW

LITIGATING HER CASE BEFORE YOU.

PETITIONER ASKS THAT HER MOTION IS REVIEWED WITHIN THE CONTEXT OF CONGRESSIONAL INTENT, MISAPPLICATION OF THE STATUTES UNDER WHICH SHE WAS CHARGED, BASED ON TOTALITY OF CIRCUMSTANCES AND THE FACTS OUTLINED HEREIN. BECAUSE OF the STATE OF NATIONAL EMERGENCY CORONA VIRUS PANDEMIC and Petitioner's underlying health condition SHE ASKS THAT THE MOTION'S REVIEW is PRIORITIZED AND REVIEWED AS URGENT, BECAUSE OF THAT THE MOTION FOR SENTENCE REDUCTION IS SUB- MITTED PRIOR TO THE FINAL RULING IN HER PENDING MOTION TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE under § 2255.

PETITIONER ASSERTS THAT BASED ON FOLLOWING FACTS AND TOTALITY OF CIRCUMSTANCES SENTENCE REDUCTION IS APPROPRIATE IN HER CASE. She also REQUESTS oral argument on this motion.

## STATEMENT OF FACTS

1. PETITIONER HAS EXHAUSTED HER ADMINISTRATIVE REMEDY AND this COURT NOW HAS THE AUTHORITY TO REVIEW HER MOTION. PETITIONER SUBMITTED A FORMAL REQUEST TO THE WARDEN on MARCH 31st, 2020 and MORE THAN THIRTY (30) DAYS HAVE PASSED. (Also, SEE ATTACHED "EXHAUSTION IS NOT NECESSARY: 3 EXCEPTIONS.") (REQUEST IS DATED March 30th, 2020).

2. PETITIONER WAS IN DETENTION SINCE OCTOBER 7th, 2013 and three years AND TEN MONTHS SHE SPENT IN PRE-TRIAL, CONSIDERED HARD TIME. She incurred PERSONAL injury to her back AND WAS EXPOSED TO TUBERCULOSIS In December OF 2016, In CCA/CTF, Washington, DC.

3. PETITIONER'S EXPOSURE TO TUBERCULOSIS, uncurable

Lung Disease, makes HER SUSCEPTIBLE TO COVID-19. PETITIONER
is ASKING FOR IMMEDIATE RELEASE BASED ON THE CARES ACT AS
HER PUNISHMENT SHOULD NOT BE CAPITAL PUNISHMENT. (SEE
" THE CARES ACT-CRITERIA AND QUALIFICATIONS" AT THE END OF THIS
MOTION.).

4. THERE ARE SEVERAL UNOFFICIAL CASES OF COVID-19 in FCI-
Aliceville, PETITIONER'S DETENTION FACILITY AND THE PRISON IS ON
LOCKDOWN. THE RISK OF EXPOSURE TO COVID-19 IS HIGH AND THIS
REQUEST IS URGENT.

5. PETITIONER IS THE ONLY CARETAKER OF HER TERMINALLY ILL FATHER.
HIS ONLY CARETAKER DIED. PETITIONER'S PARENTS ARE BOTH ELDERLY AND
DIVORCED. HER MOTHER IS CARING FOR HER DISABLED BROTHER. PETITI-
ONER IS THE ONLY CHILD. (SEE EXHIBIT A)

6. PETITIONER COMPLETED CLOSE TO TWO THOUSAND (2,000) PROGRAM
HOURS SINCE THE BEGINNING OF HER INCARCERATION. SHE IS REHABILI-
TATED AND A DIFFERENT PERSON NOW THAN SHE WAS SEVEN YEARS
AGO. HER FURTHER DETENTION WILL NOT SERVE OBJECTIVES OF 3553(a)(2)
THAT DETENTION "PROVIDE THE DEFENDANT WITH NEEDED EDUCATION OR
VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT."
PETITIONER EXHAUSTED ALL EDUCATIONAL PROGRAMS IN FCI-ALICEVILLE, SHE
IS INELIGIBLE FOR TRANSFERS AND MEDICAL CARE IS NON-EXISTENT. LONGER
SENTENCES PROVED TO HAVE CRIMINOGENIC EFFECT (SEE EXHIBIT D).

7. BECAUSE PETITIONER IS A NON-CITIZEN SHE IS NOT ELIGIBLE FOR TIME
CREDIT, HALFWAY HOUSE, HOME CONFINEMENT, CAMP OR ANY TRANSFERS.
SHE WAS DENIED RDAP, RESIDENTIAL DRUG TREATMENT PROGRAM, LACP, Religious
BASED PROGRAM BECAUSE OF HER NON-CITIZEN STATUS.

8. PURSUANT TO THE FIRST STEP ACT PETITIONER IS ELIGIBLE FOR
EXPEDITED REMOVAL AND GRANTING THIS MOTION WILL AFFORD
PETITIONER AN OPPORTUNITY TO BE EXPEDITIOUSLY REMOVED/DEPORTED
IN ACCORDANCE WITH THE FIRST STEP ACT (SEE Exhibit A). AFTER SUB-
MITTING HER REQUEST WITH DOJ THE WARDEN DENIED REQUEST BECAUSE
"THEY DO NOT KNOW HOW TO 'INTERPRET NEW LAW'." PETITIONER'S REQUEST
TO BIA, BOARD OF IMMIGRATION Appeals; AND ICE, IMMIGRATION AND
CUSTOMS ENFORCEMENT, WERE NOT ANSWERED. SENTENCE REDUCTION
GRANTED BY THIS COURT WILL REMEDY THE SITUATION AS PETITIONER
WILL BE DEPORTED PURSUANT TO FIRST STEP ACT's LEGISLATIVE INTENT.

9. PETITIONER FACES DEPORTATION AND FURTHER DETENTION IN ICE.
BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL PETITIONER WAS
NOT PRESENTED WITH OPPORTUNITY TO REQUEST A STIPULATED JUDICIAL
ORDER OF REMOVAL PURSUANT TO 8 U.S.C. § 1228(d)(1) OR TO REQUEST
A 4-LEVEL downward DEPARTURE AS PART OF THE Immigration
FAST-TRACK Program (5K3.1) RENDERING HER SENTENCE MORE
PUNITIVE AND DESERVING OF SECOND CHANCE REVIEW FOR TIME.
REDUCTION.

IV

10. PETITIONER COMPLETED SEVEN (7) OUT OF TWELVE (12) YEARS WITH GOOD TIME CREDIT, MORE THAN FIFTY PERCENT <u>(50%)</u> AS REQUIRED UNDER <u>THE CARES ACT.</u>

11. PETITIONER IS ELIGIBLE UNDER ALL PROVISIONS OF <u>THE</u> <u>CARES ACT</u> except she is a <u>non-citizen</u> and this Court can remedy that by granting petitioner's motion for sentence reduction.

12. PETITIONER is <u>not a danger</u>. She has no criminal ties TO HER COUNTRY OR ELSEWHERE. She is <u>not affiliated with or PART OF</u> any gang/organized crime group. She will reside WITH HER FAMILY IN UKRAINE AND TAKE CARE OF HER TERMINALLY ILL FATHER.

13. PETITIONER <u>DID NOT</u> DERIVE HER <u>INCOME</u> FROM <u>CRIMINAL ACTIVITY.</u> SHE DID NOT BENEFIT FINANCIALLY FROM THE CRIME. SHE WAS A HARD WORKING WOMAN.

14. THERE WERE <u>NO VICTIMS</u> AND CRIME WAS COMMITTED AGAINST PETITIONER'S <u>OWN</u> PRIVATE PROPERTY.

15. IN CONSIDERATION OF <u>3553(a)</u> SENTENCING FACTORS that weigh strongly in FAVOR OF RELIEF, FOLLOWING MUST BE CONSIDERED:

A. Petitioner is FIRST TIME OFFENDER

B. Petitioner's mental state and judgment were affected by HORMONAL DISBALANCE, postpartum syndrome, SEVERE DEPRESSION, BATTERED woman syndrome and other symptoms as a result of two forced Abortions within one YEAR AND ABUSIVE RELATIONSHIP. PETITIONER FILED RESTRAINING ORDER and POLICE REPORTS.

C. Petitioner spent three years and ten months in pre-trial confinement <u>HARD TIME</u>

D. Petitioner cooperated, accepted responsibility and expressed deep remorse.

E. PETITIONER IS CURRENT WITH HER FRP payments

F. SENTENCE DISPARITY (SEE Exhibit C);

<u>IV</u>

F1. State plea of FIVE (5) YEARS v. Federal plea of FIFTEEN (15) years arising from the SAME OFFENSE.

F2. Congressional intent is to eliminate stacking (924(c)) practices that parallel 844(h)(1) ARSON statute that must run consecutive AND allow FOR SAFETY Valve provision FOR mandatory minimums like that in Petitioner's CASE, under FIRST STEP ACT.

F3. Congressional intent FOR ARSON statute was to deter arson in public, NOT OF PRIVATE PROPERTY like in Petitioner's CASE (844(h)(1)

F4. Congressional intent FOR 844(i) was to protect business property, not private property used FOR personal purposes like that OF the Petitioner.

F5. Sentence disparity of Real arson CASES during Baltimore City Riot on North Ave (CASES OF GREEN, CARTER, Stewart)

G. SERIOUSNESS OF THE OFFENSE: ARSON is no Longer crime of violence, pursuant to DIMAYA AND OTHER CASES THAT FOLLOWED.

H. CORONA VIRUS pandemic constitutes "extraordinary AND compelling circumstances' in itself. THE CARES ACT mandates Release OF PRISONERS WHO ARE THE MOST susceptible to COVID-19, Like the Petitioner. Petitioner is asking FOR RELIEF BY MEANS OF SENTENCE REDUCTION BECAUSE SHE IS A NON-CITIZEN. AND CAN NOT BE RELEASED UNDER THE CARES ACT ON HOME CONFINEMENT.

# FACTUAL BACKGROUND

On OCTOBER 7th, 2013 Petitioner was arrested in JFK airport while traveling to see her father in Ukraine. She informed the authorities of her TRAVEL ARRANGEMENTS yet was detained, classified as "FLIGHT RISK" AND held on a BAIL THAT COULD NOT BE PAID. She was offered FIVE (5) YEAR plea on State charges. HER ATTORNEY, VLADIMIR GUOZD, Referred by THE EMBASSY OF UKRAINE to PETITIONER'S FATHER AS "CRIMINAL ATTORNEY" yet PRACTICING MOSTLY IMMIGRATION LAW, TOLD THE PETITIONER SHE would be acquitted on State charges AND no Federal Indictment would follow. On State charges Petitioner would have done FIFTY PERCENT (50%) OR TWO AND A HALF YEARS AND WOULD BE DEPORTED.

PETITIONER WAS PRESENTED WITH A LETTER FROM THE GOVERN-
MENT STATING THAT IF SHE DOES NOT ACCEPT FIVE (5) YEAR
PLEA WITH THE MARYLAND State SHE WOULD FACE A POSSIBILITY
OF GETTING FEDERALLY INDICTED FOR THE SAME FIVE YEARS
BUT WOULD END UP SERVING EIGHTY FIVE (85%) PERCENT OF
HER SENTENCE. THE GOVERNMENT PROBABLY PLANNED ON CHARGING
THE PETITIONER under 18 U.S.C. & 844 (i) THAT CARRIES FIVE (5)
YEARS. UNDER §844 (i) THE PROPERTY MUST BE ACTIVELY
INVOLVED IN INTERSTATE COMMERCE AND IT WAS NOT. THEREFORE,
THE GOVERNMENT CHARGED THE Petitioner under 18 U.S.C
§844 (h)(i) where only INTENT TO COMMIT a FEDERAL FELONY,
WIRE FRAUD, WAS REQUIRED. Thus, PETITIONER WAS CHARGED
UNDER A MUCH HARSHER STATUTE CARRYING ten years and
a consecutive REQUIREMENT DISREGARDING CONGRESSIONAL
INTENT THAT §844 (h)(i) is USED SPECIFICALLY FOR PUBLIC
arsons AND NOT PRIVATE property. WHEN Petitioner
WAS FEDERALLY INDICTED HER TWO-COUNT INDICTMENT
TOTALLED FIFTEEN (15) YEARS AND NOT FIVE (5). LATER,
the SUPERSEDING Indictment totalled FIFTY FIVE (55)
YEARS, ARISING FROM THE SAME OFFENSE,

The ISSUE AT FACT is NOT WHETHER PETITIONER KNEW
ABOUT THE LENGTHY SENTENCE SHE WOULD BE FACING BUT
RATHER WHETHER SUCH HUGE DIFFERENCE IN THE AMOUNT OF
TIME, ARISING FROM THE SAME OFFENSE, CONSTITUTES
SENTENSE DISPARITY?

Numerous CASES CONFIRM IT WAS PROPER FOR THE
GOVERNMENT TO CHARGE THE Petitioner under §844(i)
SEE US v. GAYDOS, 108 F. 3d 505; 1997 U.S. App. LEXIS 4797
(3rd Cir. 1997) where DEFENDANT WAS CONVICTED OF
malicious destruction OF PROPERTY BY MEANS OF FIRE, in
violation OF 18 U.S.C.S. § 844 (i), AFTER THE HOME SHE
HAD OWNED FOR RENTAL INCOME WAS LOST IN FIRE.
IN Russell v. UNITED States, 471 U.S. 858, 105 S.Ct. 2455,
85 L. Ed. 2d 829 (1985), the SUPREME COURT HELD THAT
§844 (i) could BE CONSTITUTIONALLY applied to a RENTED APART-

<u>VII</u>

MENT BUILDING. SEE U.S. v. Patterson, 792 F. 2d 531, 534 (5th Cir. 1986) "partially completed condominium complex found to affect interstate commerce for purposes of §844(i). BECAUSE Petitioner's property was not actively involved in interstate commerce and to ensure conviction the government charged the defendant under a more punitive statute §844 (h)(t) intended to prevent public arsons, such mis-APPLICATION OF STATUTES, multiplicity and Duplicity of CHARGES, ARISING FROM SUPERSEDING INDICTMENT just to ensure conviction at trial or pressure to plea guilty CLEARLY IMPUNGS THE FAIRNESS, INTEGRITY AND PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS AND CAN BE CORRECTED BY this court by reducing Petitioner's sentence to time served.

After retaining Catherine Flynn to Re-present

Petitioner at trial, the Government issued a Superseding Indictment. The Superseding Indictment did not include any new offenses, rather the counts were duplicated and multiplied, Resulting in total, of fifty five years. It seems that the Government can give but any number for any crime, without any Justification with SOLE PURPOSE OF SECU-Ring the conviction. As Your Honor may know such "TRIAL TAX" or "TRIAL PENALTY" HAS BEEN Heavily CRITICIZED It is now considered by the courts in sentence Reductions. Petitioner here was not penalized for going to trial, she was penalized for wanting to go to trial and preclu-ded from exercising her Sixth Amendment Right to a jury trial, where jurors could decide both on the law and the facts. Petitioner thought she was pleading guilty to original two count indictment, instead she was faced with four counts, arising from that same offense. Defendant's Attorney, Catherine Flynn, told her to

VIII

"SIGN, NOT WORRY WHAT IT SAYS" and THAT DEFENDANT WOULD GET TIME SERVED AFTER COOPERATION. CATHERINE FLYNN TOLD THE PETITIONER SHE WOULD BE DEPORTED AND WAS ELIGIBLE FOR TREATY TRANSFER. TREATY TRANSFER WAS DENIED. (SEE EXHI-BIT A.) PETITIONER HAD TO WITHDRAW HER CLEMENCY AND DIRECT APPEAL FOR THE TREATY TRANSFER TO BE REVIEWED.

ON MARCH 31st, 2020 PETITIONER SUBMITTED a WRITTEN REQUEST TO THE WARDEN, PATRICIA BRADLEY, ASKING FOR SENTENCE REDUCTION UNDER 18 U.S.C §3582(c) AS AMENDED BY SEC. 603 OF THE FIRST STEP ACT. AS OF THE DAY OF THE FILING, MORE THAN THIRTY (30) DAYS HAVE PASSED SINCE THE PETITIONER SUBMITTED THE REQUEST, The WARDEN HAS NOT FILED WITH THIS COURT ON BEHALF OF THE PETITIONER. Therefore, this Honorable Court now has authority to Review Petitioner's MOTION FOR SENTENCE REDUCTION. *Also "SEE "EXHAUSTION IS NOT NECESSARY" AT THE END.

## THE COURT HAS JURISDICTION

The COURT NOW has THE AUTHORITY TO REDUCE PETITIONER's SEN-TENCE BASED ON THE "EXTRAORDINARY AND COMPELLING CIRCUMSTANCES" PRESENTED HERE. This COURT HAS THE JURISDICTION TO HEAR THIS MOTION BECAUSE MORE THAN THIRTY (30) DAYS HAVE ELAPSED, SINCE PETITIONER SUBMITTED HER REQUEST TO THE WARDEN, AND THE DIRECTOR OF THE BOP HAS NOT FILED A MOTION WITH THIS COURT. PURSUANT TO SEC. 603 OF THE FIRST STEP ACT, which AMENDED 18 U.S.C §3582 (c)(1)(A), SEE P.L. 115-391, 132 Stat. 5194, at §603 (DEC. 21, 2018). UNDER THE AMENDED STATUTE, A COURT can now REDUCE A SENTENCE FOR "EXTRAORDINARY AND COMPELLING REASONS in TWO CIRCUMSTANCES:

(i) IF THE DIRECTOR OF THE BOP FILES A MOTION REQUESTING SUCH RELIEF; OR

(ii) "UPON MOTION OF THE DEFENDANT", IF THE DEFENDANT HAS FULLY EXHAUSTED ALL ADMINISTRATIVE REMEDIES TO APPEAL THE BOP's FAILURE TO BRING A MOTION, OR IF THIRTY (30) DAYS HAVE LAPSED " FROM THE RECEIPT OF SUCH A REQUEST BY THE WARDEN OF THE DEFENDANT'S FACILITY, WHICHEVER IS EARLIER. 18 U.S.C. §3582(c)(1)(A); SEE Also United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (D Tex. June 17, 2019) (UNDER NEWLY AMENDED §3582(c)(1)(A) THE DEFENDANT HAS STANDING TO BRING THIS MOTION BECAUSE MORE THAN (30) THIRTY DAYS ELAPSED BETWEEN HIS REDUCTION IN SENTENCE REQUEST TO THE WARDEN AND A RESPONSE).

As STATED ABOVE, THE PETITIONER, Julia TERYAEVA-REED, Submitted THE REQUEST ON MARCH 31st, 2020 AND OF THE DATE OF THIS FILING, MORE THAN THIRTY (30) DAYS HAVE PASSED, THE FBOP NEITHER DENIED THE PETITIONER'S MOTION NOR FILED A MOTION WITH THIS COURT ON PETITIONER'S BEHALF. Accordingly, PETITIONER HAS STANDING TO BRING THIS MOTION DIRECTLY TO this COURT AND this COURT IS VESTED WITH JURISDICTION TO REVIEW PETITIONER'S MOTION PURSUANT TO 18 U.S.C. §3582(c)(1)(A).

# THIS COURT HAS BROAD AUTHORITY

SECTION 3582(c)(1)(A) as AMENDED BY THE FIRST STEP ACT PROVIDES THAT THE COURT MAY, UPON THE Bureau OF Prisons MOTION OR THE DEFENDANT'S OWN MOTION AFTER DEFENDANT Fully EXHAUSTED ALL ADMINISTRATIVE RIGHTS, REDUCE AN INMATE'S TERM OF IMPRISONMENT DUE TO:

(i) "extraordinary AND Compelling Reasons warrant such a REDUCTION."

"SECTION 3582(c)(1) PERMITS A SENTENCING COURT TO REDUCE A TERM OF IMPRISONMENT IF IT FINDS THAT "EXTRA-ORDINARY AND COMPELLING REASONS WARRANT SUCH A REDUCTION' AND THE REDUCTION " IS CONSISTENT WITH APPLICABLE POLICY STATE-MENTS ISSUED BY THE SENTENCING COMMISSION" 18 U.S.C. §3582(c)(1).

X

U.S.S.G. §1B1.13 and related Commentary from the Sentencing Commission were most recently updated on November 1, 2018, before the effective date of the First Step Act December 21, 2018. Commission's failure to amend Guideline §1B1.13 and related Commentary following the First Step Act thus leaves the Courts with broad authority to interpret when extraordinary and compelling circumstances exist and how much sentence reduction should be granted and allows for application under subsection (D), titled "Other Reasons", a "catch all" provision.

Thus, the changes to 18 U.S.C. §3582(c)(1)(A)(i) made by the First Step Act vested this Court with broad authority to interpret when extraordinary and compelling circumstances exist in Petitioner's case and how much sentence reduction should be warranted. Petitioner prays for time served.

When Congress passed Comprehensive Control Act that abolished parole and set in place Guideline sentencing system, it allowed for alternative means of sentence reduction under §3582(c).

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

Put differently, the situations listed in original §3582(c) were thus intended to serve as "safety valve" for modification of sentences, giving judges broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist. The mandate was simple: "If extraordinary and compel

LING CIRCUMSTANCES WERE PRESENT, THEY WOULD JUSTIFY A REDUCTION OF UNUSUALLY LONG SENTENCE." S. REP NO. 98-226, at 55-56.

FIRST STEP ACT HAS EXPANDED THE APPLICATION OF THAT PROVISION, NOT LIMITING "EXTRAORDINARY AND COMPELLING CIR-CUMSTANCES" TO ONLY THOSE ENUMERATED BY THE SENTENCING COMMISSION, ALLOWING THE JUDICIARY FOR BROAD DISCRETION IN INTERPRETING AND DETERMINING WHEN "EXTRAORDINARY AND COMPELLING CIRCUMSTANCES" EXIST, WHAT SENTENCE REDUCTION IS WARRANTED ON CASE-BY-CASE BASIS AND ALLOWING THE DEFENDANTS TO PETITION WITH COURT AFTER EXHAUSTING ADMINISTRATIVE REMEDIES.

BESIDES "EXTRAORDINARY AND COMPELLING CIRCUM-STANCES" NOT EXPRESSLY ENUMERATED BUT APPLICABLE TO PETITIONER'S CASE, THE PETITIONER BRINGS TO THE ATTENTION OF THE COURT SECTIONS WITHIN U.S.S.G. §1B1.13 THAT ARE APPLICABLE AND RELEVANT FROM THE STANDPOINT OF CONGRES-SIONAL INTENT IN PETITIONER'S CASE. PETITIONER APPLIES FOR THE CIRCUMSTANCES NOT EXPRESSLY ENUMERATED UNDER SUBSECTION (D) "OTHER REASONS", THE "CATCH ALL" PROVISION.

## UNITED STATES SENTENCING GUIDELINES §1B1.13

When enacting 3582(c) Congress delegated responsibility FOR DEFINING WHAT CONSTITUTES "EXTRAORDINARY AND COMPEL-LING Reasons" TO THE UNITED States Sentencing Commission. (Hereinafter "The Commission").

The Commission DEFINED FOUR (4) CATEGORIES. FIRST ADDRESSING MEDICAL CONDITION OF THE DEFENDANT. SECOND - THE AGE OF THE DEFENDANT. Third- family circumstances (where THE CARETAKER OF THE DEFENDANT'S CHILD DIES OR BECOMES INCAPACITATED AND THE DEFENDANT BECOMES THE SOLE CARETAKER OF THE CHILD). FOURTH- subsection (d)- "OTHER REASONS." It is under THIS subsection (D) THAT PETITIONER, JULIA TERYAEVA-REED, is SEEKING RELIEF.

Reasons for relief.

A motion for relief under 18 U.S.C. §3582(c)(1)(A)(i) requires a court to consider other factors including petitioner's health, change in family circumstances, rehabilitation, whether petitioner is a danger, change in law, nature of the offense and 3553(a) sentencing factors.

## 1. PETITIONER'S HEALTH

Petitioner was exposed to tuberculosis while in pre-trial detention in Corrections Corporation of America CCA/CTF, 1901 E St. SE, Washington, DC 20003 around December, 2016. Petitioner was given "Isoniazid", tuberculosis medication, that made her very sick. On 5/12/17 petitioner went to medical and asked to be given an alternative. She was given a list of other medication available, but was told that "FBOP would not approve them". (See attached exhibit B). Petitioner was denied prescription and condition remained untreated. Because of UNTREATED TUBERCULOSIS petitioner is more SUSCEPTIBLE TO COVID-19 than an average person. Petitioner's punishment should not be capital punishment. In accordance with memorandum issued by Bill Barr, United States Attorney General, clarifying criteria for release mandated by THE CARES ACT OF MARCH 26, 2020, it is advisable to RELEASE MOST VULNERABLE AND THOSE WHO POSE NO RISK TO SOCIETY FIRST. Petitioner faces deportation and poses no danger. Given the fact that there are cases of COVID-19 in petitioner's detention facility FCI-Aliceville, she should be given priority of her motion review. The risk of contracting COVID-19 is very high as there are two people per cell, one hundred twenty people per unit sharing the showers, phones, computers and common areas. The facility is continuing to accept new inmates housed directly on top of petitioner's cell connected by the vents to those quaranteened and housed together. Masks were distributed, but most inmates do not adhere to the rules and take them off, especially when communi-

CATING TO DIE ANOTHER. INMATES ARE LITERALLY ON TOP OF EACH OTHER AND SOCIAL DISTANCING IS IMPOSSIBLE, BESIDES FACE MASKS FCI-ALICEVILLE DOES NOT PROVIDE ANY DISINFECTING SUPPLIES. THERE IS NOTHING THAT COULD BE PURCHASED ON COMMISSARY THAT IS ALCOHOL OR BLEACH BASED. ALICEVILLE'S HOSPITAL "PICKENS COUNTY HOSPITAL" CLOSED ITS DOORS TO THE PUBLIC ON FRIDAY, MARCH 6, 2020 DUE TO FINANCIAL PROBLEMS. INMATES ARE SAID TO BE TAKEN TO A SMALL RURAL HOSPITAL IN MISSISSIPPI. SMALL RURAL HOSPITALS ARE NOT EQUIPPED TO PROVIDE ADEQUATE CARE NECESSARY TO COMBAT CORONA VIRUS. THE CAPACITY OF A SMALL RURAL HOSPITAL IS INSUFFICIENT TO HANDLE PRISON POPULATION OF FCI-ALICEVILLE OF AROUND 1,200 PEOPLE, IN ADDITION TO GENERAL PUBLIC ALREADY AFFECTED BY COVID-19.

## 2. FAMILY CIRCUMSTANCES

PETITIONER'S FATHER IS TERMINALLY ILL. HIS ONLY CARE-TAKER DIED. (SEE Exhibit A). PETITIONER'S PARENTS ARE ELDERLY AND DIVORCED. HER MOTHER IS CARING FOR HER DISABLED BROTHER. PETITIONER'S PARENTS ARE UNABLE TO COME TO THE UNITED STATES AS THEIR VISAS EXPIRED AND WERE DENIED RENEWAL. AS YOU MAY REMEMBER, YOUR HONOR, THE GOVERNMENT HELPED PETITIONER'S MOTHER TO SECURE A VISA DUE TO HER COOPERATION AND ASSISTANCE. HER MOTHER WAS ABLE TO ATTEND PETITIONER'S SENTENCING AND IT WAS THE LAST TIME SHE SAW THE PETITIONER, SAME AS PETITIONER'S FATHER. PETITIONER IS THE ONLY CHILD. IN Subsection (c) OF THE U.S.S.G. §1B1.13 "Family Circum-stances" IT IS STATED THAT IF PETITIONER BECOMES THE SOLE CARETAKER FOR THE CHILD A COMPASSIONATE RELEASE MAY BE GRANTED. PETITIONER'S SITUATION IS SIMILAR, IN THAT SHE IS THE ONLY CARETAKER BUT TO HER FATHER AND NOT A CHILD AS STATED IN SUBSECTION (c). HENCE, PETITIONER IS SEEKING RELIEF UNDER SUBSECTION (D) "CATCH-ALL" PROVISION THAT INCLUDES "OTHER REASONS" AND WHERE THE DISCRETION FOR RELIEF IS GIVEN TO THE JUDGE.

IN ADDITION, FBOP PROGRAM Statement PS 5050.49 TITLED COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §3582(c)(1)(A) and 4205(g) LISTS REQUEST BASED ON NON-MEDICAL CIRCUMSTANCES - INCAPACITATION OF A SPOUSE OR REGISTERED PARTNER. "THE CRITERIA FOR (REDUCTION IN SENTENCE) RIS REQUEST MAY INCLUDE THE INCAPACITATION OF AN INMATE'S SPOUSE OR REGISTERED PARTNER WHEN THE INMATE WOULD BE THE ONLY AVAILABLE CARE-GIVER FOR THE SPOUSE OR REGISTERED PARTNER." Thus, OTHER FAMILY MEMBERS ARE RECOGNIZED FOR THE PURPOSES OF COMPASSIONATE RELEASE/REDUCTION IN SENTENCE BY FBOP.

   IN PETITIONER'S CASE SHE CAN ONLY APPLY UNDER SUB-SECTION (d) - "other Reasons" and discretion rests with the judge.

## 3. REHABILITATION

PETITIONER USED HER TIME EFFECTIVELY AND STAYED FOCUSED ON REHABILITATION AND EDUCATION THROUGHOUT THE ENTIRE TERM OF HER DETENTION, KNOWING SHE IS INELIGIBLE TO TIME CREDIT DUE TO PROGRAMMING BECAUSE OF HER NON-CITIZENSHIP STATUS. She PROGRAMMED MORE THAN AN AVERAGE INMATE AND COMPLETED CLOSE TO TWO THOUSAND (2,000) CREDIT HOURS FOR VARIOUS SPIRITUAL BASED, PSYCHO-LOGY-ORIENTED, AND COLLEGE COURSES INCLUDING AMERICAN BIBLE ACADEMY COURSES, STAMFORD UNIVERSITY COURSES, TWO-YEAR BLACKSTONE PARALEGAL CERTIFICATE PROGRAM, CARPENTRY VOCATIONAL TRAINING, 120-DAY RESIDENTIAL DRUG TREATMENT PROGRAM, ANGER MANAGEMENT, COGNITIVE THINKING AND MANY OTHERS LISTED IN EDUCATIONAL TRANSCRIPT AND ATTACHED LISTING OF COMPLETED COURSES. (SEE Exhibit B) PETITIONER ASSISTED IN TEACHING PAINTING class AND VOLUNTERED TO NUMEROUS ART-BASED PROJECTS. She CONTRIBUTED AND DONATED HER ARTWORK TO VARIOUS INSTITUTIONS. PETITIONER WAS BAPTISED AND CHANGED her LIFE AROUND. She continues to attend church AND FACILITATE BIBLE STUDIES. SHE IS A

DIFFERENT PERSON NOW THAN SHE WAS SEVEN (7) YEARS AGO. SHE HAS UNDERGONE TREMENDOUS TRANSFORMATION FROM WITHIN THAT CHANGED HER THINKING AND REFLECTS IN ACTION SHE TAKES EVERY DAY STRIVING TO BECOME A BETTER PERSON, HER AGE HAS PLAYED A FACTOR — AT THIRTY SIX (36) SHE IS A MORE MATURE AND COGNIZANT PERSON THAN IN HER LATE TWENTIES.

PETITIONER HAS EXHAUSTED PROGRAMMING AVAILABLE IN FCI-ALICEVILLE. BECAUSE OF HER NON-CITIZEN STATUS SHE IS INELIGIBLE FOR TRANSFER, WAS DENIED RDAP, RESIDENTIAL DRUG TREATMENT PROGRAM AND DENIED LACP, RELIGIOUS BASED PROGRAM.

At SENTENCING Honorable Judge Russell ordered/ RECOMMENDED RDAP and mental health programming, but FCI-ALICEVILLE DOES NOT OFFER RDAP OR mental health programs. Further detention will not serve the objec-tives of § 3553(a)(2) that incarceration "PROVIDE THE DEFEN-DANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT."

As outlined in Shon Hopwood's report, longer SENTENCES HAVE "CRIMINOGENIC" EFFECT, meaning the longer THE SENTENCE - THE HIGHER THE PROBABILITY TO RECIDIVATE. (SEE Exhibit D). PETITIONER IN THIS CASE HAS UNDERGONE TREMENDOUS AMOUNT OF PROGRAMMING AND THAT FACTOR WEIGHS HEAVILY IN SUPPORT OF GRANTING RELIEF.

## 4. PETITIONER NOT A DANGER

IN DETERMINING WHETHER PETITIONER'S SENTENCE SHOULD BE REDUCED, THE COURT MUST DECIDE WHETHER PETITIONER PRESENTS A DANGER TO THE SAFETY OR ANY OTHER PERSON OR TO THE COMMUNITY, AS PROVIDED IN 18 U.S.C. §3142(g). USSG. § 1B1.13(2)

IF PETITIONER WAS RELEASED SHE WOULD POSE NO DANGER TO THE COMMUNITY FOR FIVE MAIN REASONS:
1) PETITIONER WAS NOT A CRIMINAL; 2) PETITIONER IS NOT A VIOLENT PERSON AS REFLECTED IN THE NATURE OF HER CRIME 3) PETITIONER IS REHABILITATED 4) PETITIONER WILL BE DEPORTED 5) PETITIONER'S RE-ENTRY PLAN IS TO STAY AND TAKE CARE OF HER TERMINALLY ILL FATHER IN UKRAINE, SHE HAS NO FAMILY, NO ASSETS AND NO SOCIAL TIES IN THE UNITED STATES.

1. Petitioner was not a criminal and did not derive her income from criminal activity. She was not a member of any gangs, organized crime group and there is no chance she will commit the crime again - there are no properties and petition- over will be deported.

2. Petitioner committed the crime against her own private property. No one was physically hurt or injured - there are no victims. The funds Petitioner needed were to sustain her business, not out of greed or immoral motive. She was a hardworking woman in a country without a family, and she was traumatized by two forced abortions and abusive relationship. This crime was not in her nature as she devoted her life to hard work and education. She is a first time offender with no prior record who deserves a second chance in life. Petitioner does not seek to minimize the crimes nor does she dispute seve- rity of them. Petitioner expressed remorse, accepted respon- sibility and dedicated herself to becoming a better person.

3. Petitioner has been transformed from within, rehabilitated and changed her thinking. Pers process. She does not have any reason to commit a crime again. Petitioner has exhibited good behavior with no minor infractions and no acts of violence throughout her entire term of imprison- ment.✦

4. Petitioner will be deported to Ukraine, the country in very far proximity from the United States and no easy way to re-enter United States. Besides the impossibility of overcoming geographical barriers, the application process to get approved for a visa is very stringent. Once deported, Petitioner will never come back and poses no danger.

5. Petitioner's re-entry plan is to stay with her terminally ill father in Ukraine. She grew up there, speaks the language fluently and has a place to live.

To conclude, Petitioner is not a danger, she is rehabilitated, her crime did not involve violence against others, she has no way to re-offend, there were no victims, and she will be deported to a very distant country of Ukraine where she will stay with her father.

XVII

5. CHANGE IN LAW UNDER FIRST STEP ACT:

SAFETY VALVE AND ELIMINATION OF UNFAIR STACKING PRACTICES.

As your Honor may know the practice of "STACKING" HAS RECEIVED CONDEMNATION FOR MANY YEARS AND WAS ELIMINATED BY THE FIRST STEP ACT. THE GOVERNMENT CAN NO LONGER INVOKE CONSECUTIVE § 924(c) CONVICTIONS ARISING FROM THE SAME OFFENSE, NOTABLY, THE FACT THAT THIS AMENDMENT WAS TITLED A "CLARIFICATION OF SECTION 924(c)" MAKES IT CLEAR THAT § 924(c) WAS NEVER INTENDED BY CONGRESS TO RESULT IN SUCH UNFAIR STACKING PRACTICES.

IN PETITIONER'S CASE, HER ARSON CHARGE UNDER 18 U.S.C. § 844(h)(1) HAS SIMILAR MANDATORY MINIMUM AND "STACKING" REQUIREMENT - IT MUST RUN CONSECUTIVE TO ALL OTHER CHARGES, EVEN THOUGH ALL CHARGES ARISE AND CONSTI- TUTE ONE OFFENSE. PETITIONER'S CHARGE OF ARSON IS NOT COMMON AND ~~MUCH~~ NOT MUCH PROBE ATTENTION HAS BEEN PAID BY LAW- MAKERS TO THAT SPECIFIC STATUTE. PETITIONER'S CHARGE OF ARSON DOES NOT FALL INTO 924(c) CATEGORY, BUT IT WAS CONGRESSIONAL INTENT TO ELIMINATE THE PRACTICE OF UNFAIR STACKINGS AND LEAVE IT UP TO THE JUDICIARY TO CORRECT THE WRONGS THEY COMMITTED. CONGRESS HAS ALSO RECOGNIZED THE PROBLEM WITH MANDATORY MINIMUM REQUIREMENTS AND INSTALLED A SAFETY VALUE PROVISION WITHIN THE FIRST STEP ACT. BY PASSING THE FIRST STEP ACT that AMENDED 18 U.S.C. § 3582, CONGRESS HAS GIVEN BROAD DISCRETION FOR JUDGES TO DECIDE WHEN IN SIMILAR CASES SENTENCE REDUCTION IS WARRANTED, RIGHT THE WRONGS ON CASE-BY-CASE BASIS WHERE CONGRESS could NOT FORESEE CIRCUMSTANCES OF EACH CASE.

3553(a) SENTENCING FACTORS

The COURT MUST NEXT WEIGH THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a) TO DETERMINE WHETHER PETITIONER'S MOTION FOR SENTENCE REDUCTION SHOULD BE GRANTED.

AT SENTENCING THE COURT CONSIDERED 3553(a) FACTORS BUT WAS RELUCTANT TO APPLY ANY MITIGATING FACTORS OR SAFETY VALVE, DUE IN PART TO THE INEFFECTIVE ASSISTANCE OF COUNSEL AND OMISSION OF RELEVANT MENTAL EVALUATION (§3553(a)(1) FACTOR) THAT WEIGHED HEAVILY IN FAVOR OF THE PETITIONER'S UNCONTESTED RESTITUTION THAT AFFECTED GUIDELINE CALCULATION (§3553(a)(7) FACTOR), SENTENCE DISPARITY (§3553(a)(7) FACTOR), FAILURE TO ADDRESS MISAPPLICATION OF THE STATUTES WHERE ELEMENTS OF THE OFFENCE NECESSARY TO SUSTAIN CONVICTION WERE MISSING, AND OTHER MIS-APPLICATION OF LAW BASED ON THE FACTS OF THE CASE. THIS COURT RELIED ON INSUFFICIENT FINDINGS AND OUT-DATED PRESENTENCE INVESTIGATION REPORT LAST UPDATED 7/23/15 AND NEVER COMPLETED BY PROBATION OFFICER WHEN SENTENCING TOOK PLACE TWO YEARS LATER ON 7/13/17.

" A SENTENCE MAY BE UNREASONABLE IF THE DISTRICT COURT FAILED TO CONSIDER A RELEVANT FACTOR THAT SHOULD HAVE RECEIVED A SIGNIFICANT WEIGHT, GAVE SIGNIFICANT WEIGHT TO AN IMPROPER OR IRRELEVANT FACTOR, OR CONSIDERED ONLY APPRO-PRIATE FACTORS BUT NEVERTHELESS COMMITTED A CLEAR ERROR OF JUDGEMENT BY IMPOSING A SENTENCE THAT LIES OUTSIDE OF THE RANGE DICTATED BY THE FACTS OF THE CASE. UNITED STATES V. HADASH, 408 F.2d. 1080, 1084 (8TH CIR. 2005).

IN ADDITION TO INSUFFICIENT FINDINGS THIS COURT DID NOT HAVE AN OPPORTUNITY TO CONSIDER 4-LEVEL DOWNWARD DEPARTURE AS PART OF THE IMMIGRATION FAST-TRACK PROGRAM (5K3.1) AND ENDED UP IMPOSING SENTENCE HIGHER THAN GOVERNMENT'S RECOMMENDATION.

SINCE THEN THE CIRCUMSTANCES AND CHARACTERISTICS OF THE PETITI-ONER (§3553(a)(1) FACTOR) ALONG WITH UNDERLYING LAW: POLICY STATE-MENTS, FIRST STEP ACT, THE CARES ACT, AND OTHER CASE LAW THEREOF HAVE CHANGED. SUCH SIGNIFICANT CHANGES AFFECT THE NEED FOR SENTENCE IMPOSED (§3553(a)(2) FACTOR) TO BE RECONSIDERED.

FACTORS TO BE CONSIDERED ARE PETITIONER'S REHABILITATION, SENTENCE DISPARITY, PETITIONER IS A FIRST TIME NON-VIOLENT OFFENDER, PETITIONER'S CRIME IS NOT A CRIME OF VIOLENCE OR VIOLENT OFFENCE, FSA's ELIMINATION OF STACKING PRACTICES AND ALLOWANCE FOR SAFETY VALVE PROVISION, HARD TIME, PETITIONER'S MENTAL HEALTH WHEN CRIME WAS COMMITTED, RESTITUTION (§3553(a)(7) FACTOR), IMMIGRATION CONSEQUENCES, QUALIFICATION UNDER THE CARES ACT.

REHABILITATION

THE SEVEN YEARS PETITIONER SPENT IN PRISON HAVE BEEN TRANSFORMA-TIVE FOR HER. SHE HAS UNDERTAKEN TREMENDOUS EFFORT AND STRONG COMMIT-MENT TO REHABILITATE HERSELF.

XIX

This FACTOR WEIGHS HEAVILY IN SUPPORT OF GRANTING RELIEF. IN Cantu-Rivera, 2019 WL 2578272, at *2 THE COURT RECOGNIZED THE "EXTRAORDINARY DEGREE OF REHABILITATION," AND RULED THAT "Mr. Cantu-Rivera's ACCOMPLISHMENTS JUSTIFIED HIS SENTENCE REDUCTION".

SENTENCING Commission CLEARLY ESTABLISHES IN Note 3 THAT: "REHABILITATION OF THE DEFENDANT IS NOT BY ITSELF AN EXTRAORDINARY AND COMPELLING REASON FOR PURPOSE OF THIS POLICY STATEMENT" MIRRORING THE LANGUAGE OF 28 U.S.C. § 994 (t). THERE-FORE, PETITIONER IS ASKING THAT HER MOTION IS VIEWED BASED ON TOTALITY OF CIRCUMSTANCES.

BASED ON TOTALITY OF CIRCUMSTANCES, IN UNITED STATES v. WADE (No. 2:99-CR-00257-CAS) (C.D.CAL. APR. 13, 2020) DEFENDANT, CONVICTED OF FIVE (5) ARMED ROBBERIES AND SENTENCED TO 877 month, AND three (3) YEARS SUPERVISED RELEASE, RECEIVED TIME SERVED. DEFENDANT'S SENTENCE RESULTED FROM FOUR STACKED MANDATORY minimum CONSECUTIVE SENTENCES UNDER 924(c) THAT PARALLELS PETITIONER'S 844(h)(1) CHARGE. THE COURT CONSIDERED TOTALITY OF CIR-CUMSTANCES AND GRANTED COMPASSIONATE RELEASE. "Although IT IS CLEAR THAT WADE'S REHABILITATION ALONE WOULD NOT QUALIFY HERE FOR SENTENCE REDUCTION AS A MATTER OF LAW, SEE 18 U.S.C. § 994(t) THE COURT CONCLUDED THAT THE COMBINATION OF FACTORS RAISED BY HER MOTION ESTABLISHES EXTRAORDINARY AND COMPELLING CONDITION THAT DO..." WADE'S MOTION WAS GRANTED AND HER SENTENCE WAS REDUCED TO TIME SERVED.

A NUMBER OF OTHER DISTRICT COURTS HAVE ALSO FOUND THAT ELIMINATION OF STACKING 924(c) CONVICTIONS THAT MIRRORS PETITIONER'S 844(h)(1) WITH MANDATORY MINIMUM AND CONSECU-TIVE REQUIREMENT, IN COMBINATION WITH OTHER CIRCUMSTANCES MAY WARRANT A MODIFICATION OF SENTENCE. SEE FOLLOWING CASES WHERE DEFENDANT'S MOTIONS WERE GRANTED!

UNITED STATES v. Chan (No. 96-CR-00094-JSW-8) (N.D. CAL MAR 31, 2020)
UNITED STATES v. MauMau (No. 08-CR-00758-TC-11) (D. Utah FEB 18, 2020)
UNITED STATES v. O'BRYAN (No. 96-10076-03-JTM) (D. Kan. FEB 21, 2020)
UNITED STATES v. BROWN, 411 F. Supp. 3d 466, 499 (S.D. Iowa 2019)
UNITED STATES v. YOUNG (No. 00-CR-00002-1) (M.D.Tenn. Mar & 4, 2020)
UNITED STATES v. URKEVICH (No. 03-CR-00037) (D. Neb. Nov 14, 2019)

# SENTENCE DISPARITY (§ 3553(a)(6) FACTOR)

The COURT SHOULD ALSO CONSIDER THE NEED TO AVOID SENTENCE DISPARITIES. AS STATED EARLIER (IN THE FACTUAL BACKGROUND

SECTION) PETITIONER WAS DEFERRED FIVE (5) YEARS ON STATE CHARGES BUT WAS SENTENCED TO THIRTEEN AND A HALF (13.5) YEARS BY THE FEDERAL COURT FOR THE SAME OFFENCE.—THIS IS FIRST.

SECOND, IT WAS CONGRESSIONAL INTENT TO DETER public arsons AND NOT ARSONS OF private PROPERTY LIKE IN PETITIONER'S CASE. (DISCUSSED IN INTRODUCTION SECTION). THIRD, BY ENACTING FIRST STEP ACT IT WAS CONGRESSIONAL INTENT TO ELIMINATE UNFAIR "STACKING" PRACTICES IN 924(c) CONVICTIONS SIMILAR TO "STACKING" REQUIREMENT IN PETITIONER'S CASE UNDER § 844(h)(1). FOURTH, THE GOVERNMENT CHARGED PETITIONER § 844(h)(1) AND § 844(i) WHEN THE ELEMENTS OF THE OFFENCE WERE MISSING UNDER BOTH, AND UNDER §1343 WHEN THE DEFENDANT DID NOT COLLECT INSURANCE BUT ONLY INTENT NEEDED TO BE PROVEN. YET, THE GOVERNMENT APPLIED MORE LENIENT STATUTES WHEN CHARGING OTHER DEFENDANTS FOR REAL public ARSONS—SEE CASES OF TREVON GREEN, DARIUS RAYMOND STEWART PROSECUTED BY JUDSON MIHOK AND RAYMOND CARTER IN EXHIBIT C.

THESE PUBLIC ARSONS TOOK PLACE IN THE SAME VICINITY AS PETITIONER'S PROPERTY AND AROUND THE SAME TIME, WHEN SAME LAW APPLIED. THE CRIMES WERE MORE EGREGIOUS AND VIOLENT; THE AMOUNT OF DAMAGES WAS GREATER AND UNLIKE IN PETITIONER'S CASE THERE WERE REAL VICTIMS. YET THEY RECEIVED LESS PUNITIVE SENTENCES AND WILL BE RELEASED BACK ON THE STREETS WHEN PETITIONER WILL BE DEPORTED AND POSES NO DANGER. THAT CONSTITUTES A VERY OBVIOUS SENTENCE DISPARITY CONSIDERING NATURE AND CIRCUMSTANCES OF THESE CRIMES. PETITIONER IS ASKING TO CORRECT THE INJUSTICE, SHE HAS SERVED TO DATE LONGER TIME THAN ANY OF THESE OFFENDERS AND DESERVES FOR SENTENCE REDUCTION.

SEE ALSO Cantu-Rivera, 2019 WL 2578272, at *2 FINDING A REDUCED SENTENCE WOULD "ALSO AVOID UNWARRANTED DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS CONVICTED OF SIMILAR CONDUCT."

PETITIONER IS A FIRST TIME NON-VIOLENT OFFENDER. THE LEGISLATIVE INTENT IS TO RELEASE FIRST TIME NON-VIOLENT OFFENDERS THAT POSE NO RISK OR DANGER, LIKE THE PETITIONER WHO WILL BE DEPORTED. PRIOR TO THIS OFFENCE PETITIONER RAN HER OWN REAL ESTATE BUSINESS AND DERIVED HER INCOME BY LEGITIMATE MEANS. BECAUSE OF TWO FORCED ABORTIONS SHE SUFFERED FROM HORMONAL IMBALANCE, & DYSMENORRHEA, HYPOTHYROIDISM, POSTPARTUM DEPRESSION, ANXIETY, BATTERED WOMAN SYNDROME, AND OTHER SYMPTOMS THAT DIMINISHED HER MENTAL CAPACITY AND AFFECTED HER ABILITY TO MANAGE HER LIFE AND HER BUSINESS. ABUSE WAS DOCUMENTED—THERE WERE MEDICAL RECORDS, RESTRAINING ORDER AND POLICE REPORTS DOCUMENTING ABUSE. YET, PETITIONER'S ATTORNEY WAS INEFFECTIVE IN THAT SHE FAILED TO CONDUCT MENTAL EVALUATION, HIRE AN EXPERT WITNESS, AND DEMANDED

⁴Additional Ten thousand ($10,000) dollars" Petitioner did not have at that time.

The Presentence Investigation Report on page 12 sec 67 states: "<u>Mental and Emotional Health</u>:

Ms. Teryaeva-Reed has been prescribed <u>Prozac</u> while incarcerated for depression. She indicated that she previously had been prescribed <u>Wellbutrin</u> for depression. She also reported taking <u>Lithium</u> as a mood stabilizer. She indicated that these medications have been prescribed by the institution. She has requested to be allowed to enter a mental health treatment program due to her depression."

<u>It</u> is obvious that Petitioner's diminished capacity by due to mental health disorder was a factor and petitioner strongly believes that absence of mental evaluation and expert testimony prejudiced her at sentencing.

<u>HARD TIME</u>

Petitioner spent a very lengthy time in pre-trial detention - three years and ten months. Once she signed the plea agreement on 5/28/2015 she thought she would get sentenced. Instead, because her cooperation was required, the government kept postponing her sentence rendering such long detention unconstitutional, in violation of the 5th, 8th, and 14th Amendments. Petitioner incurred personal injury to her back in Baltimore City Jail that was shut down due to numerous violations and inhumane conditions of confinement. To this day petitioner has untreatable chronic back pain. While in CCA/CTF, Washington, DC, among other things she was exposed to tuberculosis, untreated lung disease that makes her susceptible to covid-19. Tuberculosis can not be cured. Such cruel and unusual punishment in violation of the fifth, eighth and fourteenth Amendments of the Constitution would) normally warrant two-for-one (2-for-1) day credit to state cases. There is no such federal law to mandate sentence credit due to hard time. Thus, it is solely at the discretion of the <u>Judge</u> and petitioner is asking to consider hardship in the context of totality of circumstances in granting sentence reduction on this motion.

<u>RESTITUTION</u> §3553(a)(7) factor. Restitution is a factor that substantially affected Petitioner, increased Petitioner's sentencing guidelines and the

XXII

amount was not contested by Petitioner's attorney. In UNITED STATES v. WHITE, 492 F. 3d 380, 2007 FED App. 0215 P. 73 FED. R. EVID. SERV. (CBC) 919 (6TH CIR. 2007), a Medicare Fraud Case, the District Court erred in failing to explain its deter- mination of the loss amount. The defendant sufficiently disputed the loss calculations on the PSR that the District Court had a duty to find facts pursuant to FRCRP 32(i)(B)B) 32(i)(3)(B). Court of Appeals found sentence improperly calculated under USSG. Despite the fact that District Court engaged in thorough review and consideration of the defendant's 18 U.S.C. §3553 arguments.

"Loss must be caused by the specific conduct that is the basis of the offence of conviction" Hughey v. United States, 495 U.S. 44, 418, 110 S. Ct 1979, 109 L. Ed. 2d. 408 (1990).

"The alleged victims must be the victims of the offence of conviction" UNITED STATES v. NEWSOME, 322 F. 3d 328, 341 (4th Cir. 2003).

In Petitioner's case Plea Agreement did not provide agreement to pay restitution to a person other than a victim, no victims are present in PSR. Pursuant to the superseding Indictment the alleged conduct Petitioner violated in Count 2, wire fraud, under 18 U.S.C. §1343 is attempt to defraud WHITE PINE INSURANCE that "paid out $52,629.21 on the policy to the mortgage holder, Lakeside National, LLC." The elements necessary to sustain conviction and restitution under Count One 18 U.S.C. §844(h) and Counts Two and Five, Seven 18 USC §844(i) are missing rendering both restitution and conviction unlawful. The victims who testified to additional $10,000 in damages were not sworn in. No other victims testified. Petitioner relies on UNITED STATES v. BLAKE, 81 F. 3d 498, 506 (4TH CIR. 1996); UNITED STATES v. SUTTON, 506 Fed. Appx. 235, 2013 U.S. App. LEXIS 1720 (4th Cir. 2013); UNITED STATES v. DAVIS, 714 F. 3d 809; 2013 U.S. App. LEXIS 8889 (4th Cir. 2013); UNITED States v. OCASIO, 750 F. 3d. 399; 2014 US. App. LEXIS 8028 (4th Cir. 2017).

Petitioner further challenges lawfulness and constitutio- nality of the entire order of restitution in light of Dimaya and voluminous filings pertaining to CAFV, condi- tional ACCEPTANCE FOR Value, the government failed to rebut. (See Exhibit E: Petitioner's response to government's opposition : II Restitution)

# THE CARES ACT - CRITERIA and QUALIFICATIONS

PETITIONER outlines below THE CRITERIA FOR ELIGIBILITY UNDER THE CARES ACT, SEC 12003 (b)(2) as specified in two MEMORANDUMS FOR DIRECTOR OF BUREAU PRISONS BY ATTORNEY GENERAL WILLIAM BARR DATED March 26, 2020 and APRIL 3, 2020 and how Petitioner qualifies for relief under the Act.

## 1. INMATE'S VULNERABILITY TO COVID-19

PETITIONER WAS EXPOSED TO TUBERCULOSIS, UNCURABLE LUNG DISEASE AND CONDITION REMAINED UNTREATED. CDC STUDY FOUND THAT 35% OF ALL HOSPITALIZATIONS RELATED TO COVID-19 REPORTED CHRONIC LUNG CONDITION. PETITIONER qualifies under this Subsection.

## 2. Inmate's SECURITY LEVEL, priority given to Low and medium. Inmate's security Level is LOW, and to the Petitioner's knowledge she is detained in medium security facility in FCI-Aliceville because of HER NON-CITIZEN status.

## 3. INMATE'S CONDUCT

Petitioner's conduct did NOT entail violence or GANG related activity AND SHE HAD no major infractions FOR THE PAST seven (7) years* She qualifies under this Subsection.

## 4. INMATE'S SCORE UNDER PATTERN

PETITIONER'S SCORE is "minimum" RECIDIVISM and SHE is "INELIGIBLE" FOR TIME CREDIT DUE TO PROGRAMMING. She qualifies under this subsection.

## 5. RE-ENTRY PLAN, RECIDIVISM AND PUBLIC SAFETY

These issues are moot because Petitioner will be deported to Ukraine, where she will be staying with and taking care of her terminally ill father. Petitioner has no assets, no family and no social ties in the United States. She has no way, or intention, to RECIDIVATE OR RE-ENTER.

## 6. CRIME OF CONVICTION and SERIOUSNESS OF THE OFFENCE. PETITIONER COMMITTED CRIME AGAINST HER OWN PROPERTY, THERE ARE NO victims, NO INSURANCE was collected BY Petitioner. Her crime is NOT a CRIME OF violence under 18 U.S.C. §16 in light of Dimaya and NOT a violent OFFENCE UNDER 18 U.S.C. §3553(a). She is NON-VIOLENT FIRST TIME OFFENDER AND QUALIFIES UNDER THIS SUBSECTION. (SEE: SERIOUSNESS OF THE OFFENCE: CRIME OF VIOLENCE).

IN  BAUTISTA v. ATTORNEY GENERAL OF THE UNITED
STATES, 744 F. 3d 54, 2014 U.S. App. LEXIS 3822 (3rd Cir. 2014)
NEW YORK attempted arson conviction is NOT AN aggra-
VATED FELONY IN Respect to collateral immigration con-
sequences under the INA. The Court VACATED BIA ruling
and found that alien was not ineligible for cancellation
of removal based on prior state conviction for attempted
arson. VACATED and REMANDED.

Pursuant to another source following is considered:

1. Non-violent offense, excluding sex offense and acts of terrorism - Petitioner qualifies

2. DETAINERS - Petitioner has ICE detainer and is deportable

3. MENTAL HEALTH CARE LEVEL LESS THAN IV - Petitioner qualifies

4. PATTERN SCORE - MINIMUM - Petitioner qualifies

5. BRAVO SCORE - LOW - Petitioner qualifies

6. Must complete 50% of the time. - Petitioner qualifies

7. NO DISCIPLINARY REPORTS - See below.

## OTHER FACTORS TO CONSIDER

- Petitioner spent THREE years and ten months in pre-trial considered HARD TIME

- Petitioner is REHABILITATED and completed close to 2,000 program hours

- Petitioner is NOT A DANGER. Prior to arrest she was a real estate investor and derived her income by legitimate means. She did not benefit financially from the crime. She will not fall back/recidivate to the same criminal activity

- Petitioner is THE FIRST TIME non violent offender

- Petitioner completed seven (7) out of twelve (12) years with good time credit, more than 50% of her time.

FOOTNOTES
_____

* On 4/7/20 while writing this motion Petitioner was attacked by her bunkmate, A.G. Because of the lockdown A.G. could not buy pills, was coming off drugs and was unstable. Petitioner has documented injuries by medical and filed a complaint. The officer gave her a disciplinary report. They also found alcohol that A.G. admitted belonged to her, but because it was in the same cell with Petitioner, the Petitioner was sanctioned. The alcohol, as stated on the report, was NOT in Petitioner's locker or personal property. Petitioner is waiting for DHO reports and appealing. She is working closely with SIS and unit TEAM to get that resolved.



XXV

# SERIOUSNESS OF THE OFFENCE: CRIME OF VIOLENCE

In granting motions for sentence reduction in accordance with THE CARES ACT and in consideration of 3553 SENTENCING FACTORS, THE SERIOUSNESS AND NATURE OF THE OFFENSE PLAY A VITAL ROLE. Most recent MEMORANDUM issued on April 3rd, 2020 by Attorney General William Barr (See Exhibit B) mandates two things:

I  MAXIMIZE RELEASES OF PRISONERS vulnerable to COVID-19

II  PROTECT THE PUBLIC

In previous and more restrictive MEMORANDUM issued on March 26, 2020 by Attorney General Bill Barr the last section specifically addresses "inmate's crime of conviction", SERIOUSNESS OF THE OFFENSE and DANGER posed by an inmate to the community. (See Exhibit B)

Petitioner in this case is not a danger as she will be DEPORTED and the crime was committed against her own private property, there were no victims. Her crime is NOT A VIOLENT OFFENSE (3553 sec. (a)) and NOT A CRIME OF VIOLENCE (18 U.S.C. §16) in light of Supreme Court decision in Dimaya and other precedents (See Exhibit B).

## 3553 (a) DEFINITION OF VIOLENT OFFENCE

As used in this section, the term "violent offence" means a crime of violence, as defined in section 16 [18 U.S.C. §16], that is punishable by imprisonment.

## 18 U.S.C. §16 CRIME OF VIOLENCE DEFINED

The term "crime of violence" means—

(a) An offence that has as an element the use, attempted use, or threatened use of physical force against the person or property of ANOTHER, or

(b) Any other offence that is a FELONY and that, by its nature, involves a substantial risk that physical force against the person or property of ANOTHER may be used in the course of committing the offense.

XXVI

As stated, petitioner committed offense against her own private property with no intent to damage others or the property of others, there were no victims, in light of Dimaya arson is not a crime of violence as defined in 18 U.S.C. §16. It is important for determination of the petitioner's eligibility under the CARES Act and in conside- ration of 3553 sentencing factors for her motion under 18 U.S.C. §3582(c)(1)(A)(i).

Prior to the Supreme Court ruling in Dimaya the reasoning that if the arson is not committed against another person or property of another, it is not a crime of violence applied, and use of physical force was required.

In <u>Tran v. Gonzales</u>, 414 F. 3d 464 (3rd Cir. 2005)

Aliens crime in Pennsylvania, offense of reckless burning or exploding under 18 Pa Const. Statute. §3301 involved neither use of force nor substantial risk that he might use force, he therefore did not commit crime of violence under 18 U.S.C. §16, thus BIA improperly ordered him deported as aggravated felon under 18 U.S.C. §1227(a)(2)(A)(iii).

In <u>Jordison v. Keisler</u>, 501 F. 3d 1134 (9th Cir. 2007)

BIA's order of removal was vacated because Alien's conviction under Cal. Penal Code §452(c) for recklessly setting fire to structure or forest land was not crime of violence under 18 U.S.C. §16(b), and thus, by definition, "aggravated felony" under 8 U.S.C. §1101(a)(43)(F).

Thus, petitioner contends that arson committed against her own private property by definition and in light of Dimaya that invalidated 16(b) residual clause is not a crime of violence. Petitioner did not use "physical force against the person or property of another" as required in sec (a) of Title 18 USC §16. Section (b) was invalidated in Dimaya. Thus her crime is not a crime of violence under 18 U.S.C. §16, not a crime of violence under 18 U.S.C. §3559(c). Petitioner is a <u>non-violent offense first time</u> <u>offender</u> and qualifies for release under the CARES Act.


XXVII

# PETITIONER DESERVES MERCY

"WITH THE PASSAGE OF THE <u>FIRST STEP ACT</u>, Congress emphasized THE IMPERATIVE OF REDUCING UNNECESSARY INCARCERATION AND AVOIDING UNDULY PUNITIVE SENTENCES THAT DO NOT SERVE THE ENDS OF JUSTICE". <u>UNITED STATES</u> v. <u>SIMONS</u>, No. 07-CR-00874, 2019 WL 1760840, at *8 (E.D.N.Y. Apr. 22, 2019)

THE SEVERITY OF PETITIONER'S SENTENCE CAN NOT BE OVERSTATED. PETITIONER HAD A PROMISING FUTURE. She POSSESSED THE SKILLSET, EDUCATION AND PERSONAL CHARACTERISTICS NEEDED TO SUCCEED. AS AN IMMIGRANT WITHOUT A FAMILY IN THE UNITED STATES SHE WORKED THREE (3) JOBS TO PAY FOR HER COLLEGE AND AFTER GRADUATION WORKED SEVERAL CORPORATE JOBS. SHE RESIGNED FROM MORGAN Stanley- Smith Barney, HER last JOB AS FAA, because IT WAS UNETHICAL business AND PETITIONER WANTED TO HAVE A MEANINGFULL CAREER THAT WOULD ENABLE HER TO CONTRIBUTE TO SOCIETY AND IMPROVE PEOPLE'S LIVES. PETITIONER DEDICATED HERSELF TO REAL ESTATE WHERE SHE COULD IMPROVE marginal COMMUNITIES AND CREATE AFFORDABLE HOUSING IN LOW INCOME NEIGHBORHOODS. AT THE PEAK OF HER CAREER SHE OWNED AND OPERATED TWENTY SIX (26) PROPERTIES. LIVING A MODEST LIFESTYLE SHE REINVESTED ALL THE PROFITS. IT WAS A HARD ROAD AND WHEN THINGS WERE FINALLY ON THE UPRISE HER LIFE TOOK A DOWNWARD TURN. SHE GOT INVOLVED IN AN ABUSIVE RELATIONSHIPS THAT RESULTED IN TWO FORCED ABORTIONS, RESTRAINING ORDER AND POLICE REPORTS DOCUMENTING ABUSE. PETITIONER WAS DISTRESSED, mentally and EMOTIONALY BROKEN AND UNSTABLE DUE TO HORMONAL disBalance, BATTERED WOMAN SYNDROME AND OTHER DIAGNOSES AS EVIDENCED IN THE AFFIDAVIT.

PETITIONER DOES NOT SEEK TO MINIMIZE HER CRIMES NOR DOES SHE DISPUTE THE SEVERITY OF THEM. PETITIONER EXPRESSED REMORSE AND AFTER SEVEN YEARS OF INCARCERATION IN THE WORST DETENTION FACILITIES IN THE COUNTRY SHE HUMBLY ASKS this HONORABLE Court FOR A MODICUM OF COMPASSION.

PETITIONER WAS IN FINANCIALLY DIFFICULT SITUATION— THE CREDIT CRISIS AFFECTED LENDERS, INVESTORS AND TENANTS. BECAUSE OF THE DEMANDING NATURE OF THE WORK SHE

WAS UNABLE TO TAKE TIME OFF AND DID NOT HAVE ADEQUATE INSURANCE TO AFFORD MENTAL HEALTH TREATMENT AND COUNSELING. SHE COULD GO TO UKRAINE WHERE MEDICAL CARE IS AFFORDABLE AND SHE WOULD HAVE FAMILY SUPPORT. AFTER SHE BOOKED HER TRIP MORE THINGS CAME UP THAT PUT HER ON THE VERGE. SHE COMMITTED A CRIME SHE REGRETS EVERY DAY OF HER LIFE. AS A RESULT SHE LOST EVERYTHING SHE WORKED FOR ALL HER LIFE - assets, licenses, EDUCATION AND FREEDOM. SHE LOST THE RIGHT TO LIVE IN THIS GREAT COUNTRY THAT AFFORDS FREEDOMS AND OPPORTUNITIES NOT existent in HER HOME COUNTRY. The SEVERI-TY OF DEPORTATION AS A PUNISHMENT IS MORE PUNITIVE THAN THE SENTENCE IN ITSELF. HER PARENTS HAVE SUFFERRED MENTALLY, EMOTIONALLY, PHYSICALLY AND FINANCIALLY. They exhausted All RESOURCES AND HER FATHER HAD A STROKE AND WAS FIGHTING FOR HIS LIFE FOR SIX (6) months. PETITIONER INCURRED PERSONAL INJURY TO HER BACK AND WAS EXPOSED TO TUBERCULOSIS- both UNTREATABLE CHRONIC CONDITIONS THAT WILL REMAIN WITH HER FOR THE REST OF HER LIFE. NOW SHE CAN BE FACING DEATH IF EXPOSED TO COVID-19. PETITIONER SUFFERRED EVERY DAY OF HER SEVEN YEAR LONG CONFINEMENT AND WAS TORTURED ENOUGH.

She is ASKING THIS Honorable COURT FOR MERCY- TO REEVALUATE HER SENTENCE, CONSIDER SEVERITY OF HER PUNISHMENT, RISK OF EXPOSURE TO COVID-19, deporTA-TION CONSEQUENCES, NATURE AND CIRCUMSTANCES OF THE OFFENSE, EXTENT OF REHABILITATION AND PERSONAL CHARAC-TERISTICS OF THE PETITIONER, FAMILY CIRCUMSTANCES, Congressional intent OF the STATUTES § 844 (h)(t) and § 844 (i) UNDER WHICH PETITIONER WAS CHARGED, change IN LAW WITH PASSAGE OF FIRST STEP ACT and THE CARES ACT, budgetary SAVINGS that will RESULT FROM DEPORTA-TION OF the PETITIONER AND THE TIME/RESOURCES it will SAVE THE GOVERNMENT AND THE COURTS.

PETITIONER HAS DEMONSTRATED THAT HER SENTENCE SERVED TO DATE OF SEVEN YEARS IS SUFFICIENT AND PUNITIVE ENOUGH TO DETER HER FROM FUTURE CRIMINAL CONDUCT, PROTECT THE PUPLIC AND PROMOTE RESPECT FOR THE LAW, AND SHE PRAYERFULLY ASKS TO GRANT HER motion.

XXIX

# IMMIGRATION CONSEQUENCES

BESIDES THE FACT THAT PETITIONER WILL HAVE TO SPEND ADDITIONAL TIME IN ICE DETENTION AND WILL BE DEPORTED TO A THIRD WORLD COUNTRY, THE PETITIONER WAS NOT PRESENTED WITH OPPORTUNITY TO REQUEST A STIPULATED JUDICIAL ORDER OF REMOVAL PURSUANT TO 8 U.S.C. §1228(d)(1) OR TO REQUEST a 4-level downward departure AS PART OF THE IMMIGRATION FAST-TRACK PROGRAM (5K3.1)

## CONCLUSION

CONGRESS HAS expanded judicial power TO DECIDE WHEN extraordinary AND COMPELLING CIRCUMSTANCES EXIST AND WHAT sentence REDUCTION SHOULD BE WARRANTED BY ENACTING FIRST STEP ACT and THE CARES ACT. PETITIONER HAS FAITH IN THE JUDICIARY AND ASKS THAT this Honorable COURT CORRECT THE WRONGS TO REFLECT THE FAIRNESS AND INTEGRITY OF THE JUDICIAL SYSTEM. PETITIONER HAS PRESENTED FACTS AND LAW THAT UNDENIABLY CRY OUT FOR SENTENCE REDUCTION. PETITIONER PRAYS THAT BASED ON FOREGOING FACTS HER MOTION FOR SENTENCE REDUCTION UNDER §3582(c)(1)(A)(i) IS GRANTED AND HER SENTENCE IS REDUCED TO TIME SERVED. THANK YOU.

RESPECTFULLY SUBMITTED                    5/18/20

JULIA TERYAEVA-REED
# 57914-037
FCI-Aliceville
PO Box 4000
Aliceville AL 35442

XXX

EXHAUSTION IS NOT NECESSARY: 3 EXCEPTIONS

United States v. Latrice Colvin, 3:19-CR-179, D Ct

In Colvin, Defendant was convicted of mail fraud was granted TIME SERVED in her application FOR COMPASSIONATE Release under 18 U.S.C. § 3582 (c)(1)(A). The Court Found that EXHAUSTION WAS NOT NECESSARY, even though the government argued that the Court MUST not consider the request because Colvin had not satisfied the exhaustion element.

The Court WENT on to say:

" FIRST, "EXHAUSTION MAY BE UNNECESSARY where it would be futile, EITHER BECAUSE AGENCY DECISION makers are BIASED OR because the agency has already determined the issue" Washington, 925 F. 3d at 118. "Undue delay, if it in fact results in catastrophic health consequences, could make EXHAUSTION FUTILE." Id at 120.

SECOND, " EXHAUSTION MAY BE UNNECESSARY where the administrative PROCESS would be incapable of granting adequate RELIEF," including situations where "THE RELIEF THE AGENCY MIGHT PROVIDE COULD, BECAUSE OF THE UNDUE Delay, become INADEQUATE." Id. at 119-20. THIRD, "EXHAUSTION MAY BE UNNECESSARY WHEN PURSUING AGENCY REVIEW WOULD SUBJECT PLAINTIFF TO UNDUE PREJUDICE" Id. at 119.

The Court concludes that all three EXCEPTIONS to the exhaustion REQUEST APPLY TO DEFENDANT'S REQUEST. FIRST, if DEFENDANT CONTRACTS COVID-19 BEFORE HER APPEALS ARE EXHAUSTED, THAT UNDUE DELAY MIGHT CAUSE HER TO ENDURE PRECISELY THE "CATASTROPHIC HEALTH CIRCUMSTANCES" SHE NOW SEEKS TO AVOID. SEE CDC GUIDELINE. SECOND, GIVEN THE BRIEF DURATION OF DEFENDANT'S REMAINING TERM OF IMPRISONMENT, THE EXHAUSTION REQUIREMENT LIKELY RENDERS BOP incapable OF GRANTING ADEQUATE RELIEF, AS HER SENTENCE WILL LIKELY ALREADY HAVE EXPIRED BY THE TIME HER APPEALS ARE EXHAUSTED AND

\

would certainly already expired by the time the 30 day waiting period ends. Third, defendant would be subjected to undue prejudice the heightened risk of severe illness while attempting to exhaust her appeals."

The court found based on "extraordinary and compelling circumstances" that release was warranted to avoid confinement in FDC Philadelphia where social distancing is difficult."

The court noted: "The CDC Guidelines confirms the defendant's position, stating plainly that "persons with diabetes" face a "higher risk of severe illness" if they contract COVID-19. Moreover, the Bureau of Prisons is "to protect the health and safety of... people in their custody."

Defendant's motion for compassionate release was granted and sentence reduced to time served.

In United States v. Scrwicz, 08-cr-287 (ARR) (E.D.N.Y. April 10, 2020) the court waived exhaustion requirement stating, in part: "Where [administrative] exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute". Washington v. Barr, 925 F. 3d 109, 118 (2nd Cir. 2019) The court granted motion and reduced sentence to time served.

In United States v. Kelly, Defendant, Lamarcus Kelly was sentenced to 97 months for shooting a firearm into an occupied building. Defendant contended that First Step Act exhaustion requirements were not jurisdictional. The court agreed and granted motion.

See: https://www.gordondefense.com/southern-district-of-mississippi-makes-important-covid-19-3582-ruling-united-states-us-kelly/,

The court first looked at whether the First Step Act's exhaustion requirements are jurisdictional. "Exhaustion requirement can either be (1) jurisdictional, meaning the rule 'governs a court's adjudicatory capacity,' that is, its subject matter or personal jurisdiction, or (2) a 'claims-processing rule, which are rules 'requiring that a party take certain procedural steps at certain specified times". When looking at the text of 18 U.S.C. § 3582 the

COURT INDICATED THAT THE LANGUAGE "DOES NOT 'CLEARLY STATE' THAT THE EXHAUSTION REQUIREMENT WAS JURISDICTIONAL,' THE COURT INDICATED THAT THE PROVISION DOES NOT SPEAK IN JURISDICTIONAL TERMS OR REFERENCES IN ANY WAY TO THE JURISDICTION OF THE DISTRICT COURT. BECAUSE OF THIS, THE LANGUAGE OF 3582(c)(1)(A) DID NOT PROVIDE A CLEAR INDICATION THAT CONGRESS INTENDED THE PROVISION TO BE JURISDICTIONAL AND THIS COURT DETERMINED THAT 3582(c)(1)(A)'s EXHAUSTION REQUIREMENT WAS A NON-JURISDICTIONAL CLAIMS-PROCESSING RULE.

THE COURT ALSO INDICATED THAT "3582(c)(1)(A)'s EXHAUSTION REQUIREMENT WAS <u>NOT MANDATORY</u> BUT ONE OF TWO WAYS THAT A PERSON COULD GET INTO COURTS. IN 3582(c)(1)(A) DEFENDANT CAN EITHER ENGAGE THEIR ADMINISTRATIVE REMEDIES OR THEY CAN WAIT THIRTY (30) DAYS AFTER THE WARDEN RECEIVES THE DEFENDANT'S REQUEST TO BRING A MOTION FOR SENTENCE REDUCTION."

IN <u>Hendricks v. Zenon</u>, 933 F. 2d 664, 672 (9th Cir. 1993) THE COURT RECOGNIZED THAT EXCEPTIONAL CIRCUMSTANCES OF PECULIAR URGENCY CAN EXCUSE EXHAUSTION REQUIRE-MENT.

IN <u>UNITED States v. Powell</u> (No. 1:94-CR-316-ESH, Dkt. No. 90) (D.D.C. Mar. 28, 2020) THE COURT GRANTED UNOPPOSED MOTION FOR COMPASSIONATE RELEASE IN LIGHT OF <u>COVID-19</u> FINDING " IT WOULD BE FUTILE" TO REQUIRE DEFENDANT TO FIRST EXHAUST IN LIGHT OF OPEN MISDEMEANOR CASE.

IN <u>UNITED States v. Underwood</u> (CASE No. 8: 18-CR-201-TDC) Dkt No. 179 (Mar 31, 2020) THE COURT ENCOURAGED RELEASE EVEN THOUGH <u>NO POSITIVE COVID-19 IN FACILITY</u>, STATING ". THERE IS SIGNIFICANT POTENTIAL FOR IT TO ENTER PRISON IN NEAR FUTURE."

IN <u>Matter of Extradition of Toledo Manrique</u> No. 19 MJ 7055 2020 WL 1307109, at *1 (N.D. Cal Mar 19, 2020) THE COURT REFUSED TO DELAY CONSIDERATION FOR RELEASE TO AWAIT EVIDENCE OF AN OUTBREAK IN JAIL BECAUSE THAT "<u>MAY BE TOO LATE</u>."

SENTENCE REDUCTIONS GRANTED UNDER 18 U.S.C. §3582(c)(1)(A)

United States v. McCarthy (No. 3:17-CR-0230)(D. Conn Apr 8, 2020)

United States v. Hansen (No. 07-CR-00520)(E.D.N.Y. Apr 8, 2020)

United States v. Trent (No. 16-CR-00178-CRB-1)(N.D. Cal Apr 9, 2020)

United States v. Plunk (No. 3:94-CR-36-TMB)(D. Alaska Apr 9, 2020)

United States v. Decator (No. CCB-95-0202)(D. Md. Apr 6, 2020)

United States v. Millan (No. 91-CR-685 (LAP) S.D.N.Y. Apr 6, 2020)

United States v. Marin (No. 15-CR-252)(E.D.N.Y. Mar 30, 2020)

United States v. Powell (No. 94-CR-00316)(D.D.C. Mar 28, 2020)

United States v. Brannan (No. 4:15-CR-00080)(S.D.TX, Apr. 3, 2020)

United States v. Resnick (No. 12-CR-152-CM)(SDNY, Apr. 2, 2020)

United States v. McPherson (No. CR94-5708RJB)(WD. Wash Apr 14, 2020)

United States v. Villanueva (18 CR. 472-3 (KPF))(S.D.N.Y. Apr 8, 2020)

United States v. Winker (No. 13-318)(W.D. PA Apr. 3, 2020)

United States v. Lowry (No. 18 CR 882)(S.D.N.Y. Apr 6, 2020)

United States v. Smith (No. 12 CR. 133 (JFK))(S.D.N.Y. Apr 13, 2020)

United States v. Coker (No. 3:14-CR-085)(E.D. Tenn., Apr. 15, 2020)

United States v. Gentille (S.D.N.Y. 2020)

United States v. Gentille (19-CR 590 (KPF))(S.D.N.Y. Apr 9, 2020)

United States v. Kataev (16 CR. 763-05 (LGS))(S.D.N.Y. Apr 14, 2020)

United States v. KaSawicz (08-CR-287 (ARR))(E.D.N.Y. Apr 10, 2020)

United States v. McCarthy (No. 3:92-CR-0070 (JCH))(D. Conn. Apr 8, 2020)

United States v. Almontes (No. 3:05-CR-58 (SRU)(D. Conn. Apr 19, 2020)

United States v. Perez (17 CR. 513-3 (AT)(S.D.N.Y. Apr 12020)

United States v. Bin Wen (W.D.N.Y. 2020)

United States v. Bin Wen (6:17-CR-06173 EAW)(W.D.N.Y Apr 13, 2020)

United States v. Wade (No. 2:99-CR-00257-CAS)(C.D. Cal Apr 13, 2020)

United States v. Scparta (No. 18-CR-578)(S.D.N.Y. Apr. 20, 2020)

Pouliou v. United States (No. 2:09-CR-109)(ED VA Apr. 21, 2020)

United States v. Atwi (No. 18-20607)(E.d. Mich. Apr. 20, 2020)

United States v. Gileno (No. 3:19-CR-161 VAB-1)(D. Conn. Apr 20, 2020)

United States v. Turner (No. 3:09-CR-00018) 2020 WL 1917833 (W.D. Va Apr 20, 2020)

United States v. Atkinson (No. 2:19-CR-55 JCM (CWH)) (D. Nev. Apr. 17, 20)

United States v. Dingle (No. 18-30098) (C.D. Ill. Apr. 20, 2020)

United States v. Bess (No. 16-cr-156) (WDNY Apr. 21, 2020)

United States v. Kennedy (No. 18-20315) 2020 WL 1493481 (E.D. Mich. Mar. 27, 20)

United States v. Copeland (No. 2:05-cr-135-DCN) (D.S.C. Mar. 24, 2020)

United States v. Michaels (No. 8:16-cr-76-JVS) (C.D. Cal. Mar. 26, 2020)

United States v. Jaffee (No. 19-cr-88) (D.D.C. Mar. 26, 2020)

United States v. Harris (No. 19-cr-356) (D.D.C. Mar. 26, 2020)

United States v. Perez (No. 19-cr-297) (PAE) (2020 WL 1329225)(6 DNY)/19 20)

United States v. Stephens, 2020 WL 1295155, F. Supp. 3d (SDNY Mar. 19, 2020)

United States v. J. Edwards, (No. 6:17-cr-3-NKM) Dkt. No. 134, (Apr. 2, 2020)

Request to commute or suspend jail sentences, Docket No. 089820
N.J. Mar 22, 2020 Releasing large class of Defendants

United States v. Hernandez (No. 18-cr-20474) Dkt. No. 41 (S.DFla Apr. 20, 20)

United States v. Rodriguez (No. 2:03-cr-271-AB) Dkt M 135 (E.D.PA Apr. 1, 20)

United States v. Williams (No. 3:04-cr-95 MCR) csk Dkt 91 (Apr. 1, 2020)

United States v. Gonzales (No. 2:18-cr-232-TOR) Dkt 834 (E.D. Wash M 31, 20)

United States v. Marin (No. 15-cr-252 DKt 1326 (E.D.N.Y, Mar 30, 2020)

United States v. Muniz (No. (4:09-cr-199) Dkt 578 (S.D. Tex Mar 30, 2020)

United States v. Bolston (No. 1:18-cr-382-MLB) Dkt 20 (N.D. GA Mar 30, 20)

United States v. Campagna 2020 WL 1489829 (S.D. N.Y. Mar 27, 20)

United States v. Boutman 2020 US Dist LEXIS 45628 (D. Nev. Mar 17, 20)

United States v. Underwood, No. 8:18-cr-201-TDC) Dkt 179 (Mar 31, 2020)

United States v. Holloway No. 19-1035-cr (Apr 2, 2020)

United States v. Powell, No. 1:94-cr-316-ESH) Dkt 90 (D.D.C. Mar 28, 2020)

# CERTIFICATE OF SERVICE

I, Julia Teryaeva-REED, declare under the perjury under the laws of the United States of America that I am eighteen (18) years of age and that the MOTION TO REDUCE SENTENCE pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as amended by Sec 603 of the FIRST STEP ACT and pursuant to THE CARES ACT was mailed to the United States District Court at 101 W. Lombard St., Baltimore, MD 21201 on this 18th day of May, 2020. FIRST CLASS POSTAGE PREPAID.

Date: 5/18/20      Signature:

Julia Teryaeva-REED
# 57914 037
FCI-Aliceville
PO Box 4000
Aliceville AL 35442